UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-                                                                   S1 10 CR 674 (RJH)

JOSEPH GAMBARDELLA,

                                Defendant.

------------------------------------------------------------X

## OPPOSITION TO THE GOVERNMENT'S *IN LIMINE* MOTIONS

       Defendant Joseph Gambardella respectfully opposes the government's in limine motions (referred to as "Govt. *in limine* motions") to preclude the admission of evidence that its witness, Evaristo ("Artie") Pabon, had: a) committed multiple domestic violence incidents; and b) had been convicted of a one kilogram cocaine distribution as well as had uncharged drug dealing conduct.

**A.    Pabon's Domestic Altercations**

       The government has identified two prior acts of domestic violence that Pabon committed against his former wife, Wanda, occurring on February 13, 2006 and June 7, 2009. Govt. *in limine* motions at 2. During the first altercation, Pabon slapped his wife in their kitchen, resulting in a visit by the police and Pabon being charged with Disorderly Conduct. Id. During the second altercation – which occurred while he was cooperating with the government in the midst of the investigation which spawned the charges in this case – according to Pabon he "grabbed" his wife and "threw her to the floor," causing her to "los[e] consciousness." Id. at 2-3.

As a result of the June 7, 2009 altercation, Pabon was charged with Disorderly Conduct and Assault in the Third Degree.[1] Id. at 3.

The government's arguments to preclude this evidence – as irrelevant, inflammatory and inadmissible pursuant to Fed. R. Evid. 608(b) – are unavailing for the failure to address a central principle: contrary to the government's assertion that these domestic violence incidents are "not probative of truthfulness and are entirely unrelated to the subject matter of the witness's direct testimony" (Govt. *in limine* motions at p. 9) they instead <u>directly</u> undermine Pabon's self-serving and repeated factual claims on the consensual recordings that he made with defendant Gambardella.

<u>Background – The Evidence Against Mr. Gambardella</u>

Mr. Gambardella is charged in an extortion conspiracy with two victims (the second

---

[1] Interestingly, the government – and Mr. Pabon apparently – have been unable to determine if Pabon was convicted of these charges, only that Pabon was ordered to take anger management classes and had an order of protection entered against him. Govt. *in limine* motions at p. 2. This is obviously surprising considering that the charges are fairly recent, the results of the cases part of the public record, and Mr. Pabon has been cooperating with the government for over three years. Perhaps it would make more sense for the government to review the files of these criminal cases – and turn them over to the defense for review – instead of relying on the apparently faulty memory of Mr. Pabon who has ever reason to downplay his conduct in these incidents. We hereby request the production of such files.

Additionally, because the government may have solely relied upon Mr. Pabon to inform it of his history of domestic violence, the government was apparently unaware of and failed to disclose an additional Wolcott Police Department incident report dated April 22, 2009 wherein Pabon's wife complained that he "yells and screams at her all the time" and "sometimes she is afraid." April 22, 2009 Police Report, attached as Exhibit A. Mrs. Pabon's fear of her husband was apparently so great that she called the police that day not because of a specific abusive incident, but because she "want[ed] a report on file in case of other problems" with him. Id. This report was also filed while Mr. Pabon was cooperating against the defendant and during the very time period charged in the indictment. The defense is unaware of what, if anything, became of this report.

victim was added pursuant to a superseding indictment on September 28, 2011); only the victims – and not any coconspirators – will testify against Mr. Gambardella.  Artie Pabon is the sole victim to have purportedly corroborating evidence of his version of the collection efforts of Mr. Gambardella: this evidence comes in the form of numerous consensually recorded tapes made over a 10 month period from October 2008 through August 2009 between Pabon and Mr. Gambardella and Milton Rodriguez, a former codefendant in this case.  It is the defense's contention that none of the tapes contain overt threats by Mr. Gambardella.

     Prior to the period of taping and Mr. Pabon's cooperation, however, two crucial incidents supporting the government's case are alleged to have occurred, neither of which were recorded by Pabon or will be corroborated by witnesses at the trial: *first*, on September 3, 2008 Pabon expected to attend a meeting with Milton Rodriguez to discuss debts he owed to Rodriguez.  According to Pabon, at that meeting he was surprised by Mr. Gambardella and a coconspirator who both physically threatened Pabon.  *Second*, Pabon will testify that Rodriguez and Mr. Gambardella went to his home in a terrifying effort to threaten him into paying his debts to Rodriguez.  Again, there are no witnesses besides Pabon expected to corroborate his claim at trial that the visit was intended to threaten him into paying the debts.

     Not surprisingly, therefore, the tapes created by Pabon and the FBI which capture Mr. Gambardella and Rodriguez are rife with attempts by Pabon to goad the two men into admitting that: a) the September 3, 2008 meeting contained the physical threats by Mr. Gambardella and the coconspirator; and b) the visit by Rodriguez and Gambardella to Pabon's home was a terrifying attempt to collect the debts owed to Rodriguez.  This issue – the visit to the house – is brought up by Pabon on the tapes *at least ten times*, in each instance Pabon claiming that he was

terrified due to the fact that his wife and children lived in that house and were in danger from Mr. Gambardella. Not a single time did Mr. Gambardella admit that the purpose of the visit was to threaten Pabon; instead he consistently claimed that the visit was necessitated by Pabon's refusal to answer or return Rodriguez's repeated phone calls.

However, the jury will listen to these tapes created by Pabon with the assistance and guidance of the FBI which self-servingly contain Pabon's play-acting as a terrified victim of what the defense will claim was a routine visit to his house by Mr. Gambardella and Rodriguez to simply talk to Pabon. And Pabon's repeated claims of terror will surely influence the jury on the issue of what Mr. Gambardella intended with that visit: a crucial element in determining whether the defendant violated the extortion statute. Of course, only Pabon was aware that he was being taped and was creating evidence against Mr. Gambardella and Rodriguez. Examples of Pabon's self-serving fear and concern for his wife and family are as follows: "I don't want you coming to my house with people man ... that's beyond" (October 15, 2008 consensual call marked Bates 1586); "Just one favor guys ... don't come to my house. That's where my family [lives] ...." (October 16, 2008 bodywire marked Bates 1588); "The fear that, that you've put me in ... the way that I sleep, unnecessarily, man [be]cause you didn't need to do that ... to my house, Milton" (November 19, 2008 bodywire marked Bates 1594).

Even less than three months *after* Pabon knocked his wife unconscious, he still complains to Rodriguez on tape about phantom visits to his house by "strange cars" which he claims have scared his wife: "My wife tells me there's strange cars down by my house.... I just don't know if you realize the impact this is taking on me and my family." August 25, 2009 bodywire marked Bates 1618. The problem is, that there is no such evidence of these "strange cars" visiting

Pabon's house and scaring his wife: Rodriguez denies it on the tape, no calls to the police were made by either Pabon or his ex-wife and presumably Pabon's long suffering and battered ex-wife will not be testifying about the incident. Yet despite the beatings he inflicted upon his wife – which presumably had a negative impact on his family – Pabon makes an unsolicited and self-serving suggestion on tape of phantom cars sent by the defendant and Rodriguez which are scaring his wife and "impact[ing]" his family. Id. And yet the government would have the defense unable to impeach the veracity of Pabon's self-reported claims about what happened to his family at the hands of the defendant. If the jury were permitted to hear about Pabon's repeated abuse of his wife – and his lack of concern for her – they would surely be less likely to believe Pabon's self-reported claims that he is terribly concerned for his wife because some cars, uncorroborated, showed up at their house and scared her.

Legal Discussion

Simply put, Pabon's self-serving concern on the tapes about the physical safety of his wife and family is completely belied by his repeated assaults on his wife – assaults which occurred *prior to and during the very time he expresses concern about her physical safety*. Counsel should therefore be permitted to expose the repeated false complaints in the tapes as manufactured and self-serving evidence. See Davis v. Alaska, 415 U.S. 308, 318 (1986) ("defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness"); Harper v. Kelly, 916 F.2d 54, 57 (2d Cir. 1990) ("Of all the rights covered by the Confrontation Clause, the right to cross-examine witnesses is perhaps the most important. In its earliest decision interpreting the Confrontation Clause, the Supreme Court wrote

that cross-examination gives the accused an opportunity to 'test[ ] the recollection and sift[ ] the *conscience of the witness....'") (emphasis supplied) quoting Mattox v. United States, 156 U.S. 237, 242 (1895).

Such a basis for cross-examination trumps any argument by the government that Rule 402 bars this line of questioning because it relates "directly to the subject matter of the witness' direct testimony." Govt. *in limine* motions at 9. Nor can the government seriously contend that this contradiction is irrelevant or maintains a low probative value compared to its potential to inflame the jury when it rebuts direct proof of the charged offense. See United States v. Sebaggala, 256 F.3d 59, 66 (1st Cir. 2001) ("It is a bedrock principle that rebuttal evidence may be introduced to explain, repel, contradict or disprove an adversary's proof") (internal quotations omitted); United States v. Whitman, 771 F.2d 1348, 1351 (9th Cir. 1985) (once the government advances a given theory, the defendant has unequivocal "right to rebut it"); see also Davis, 415 U.S. at 318; Howard v. Walker, 406 F.3d 114, 129 (2d Cir. 2005) (right of cross-examination "effectively denied" when defendant cannot expose relevant information to the jury) (citation and internal quotes omitted).

Moreover, the government's "threshold" claim that Rule 608(b) prohibits extrinsic proof of these acts and requires leave of the Court for inquiry on cross-examination misses the point. Govt. *in limine* motions at 3. Rule 608 only addresses admission of specific instances of the witness' conduct in determining his *character for truthfulness*. Fed. R. Evid. 608; United States v. Schwab, 886 F.2d 509, 511 (2d Cir. 1989) (Rule 608 does not apply where the "misconduct may be relevant to an issue in the case"); cf. United States v. Atherton, 936 F.2d 728, 734 (2d Cir. 1991) (district court properly excluded extrinsic evidence of witness' prior narcotics activity

6

under 608(b) which "was probative *only* of [his] general character for truthfulness") (emphasis supplied); United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) ("Where evidence of specific acts is offered to attack the witness' *character for truthfulness*, its admission is governed by Rule 608(b)") (emphasis supplied). Defendant Gambardella, however, does not seek this "purpose" (Fed. R. Evid. 608(b)) for admission or as a basis for questioning, indeed, as the government argues at length, the defendant would be hard-pressed to demonstrate that Pabon's proclivity for domestic violence is indicative of his "veracity as a witness." Govt. *in limine* motions at 6-9.

      To the contrary, Gambardella seeks to impeach the witness' *portrayal of events* as documented through the tape recorded conversations that he created – precisely the type of material to which Rule 608 has no applicability. Schwab, 886 F.2d at 511. To this end, the government's accidental quoting of an earlier version of Rule 608 is helpful, noting that the rule prohibits introduction of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' *credibility* ...." Govt. *in limine* motions at 4 (emphasis supplied). Rule 608, however, was amended in 2003 to remove the word "credibility" in order "to clarify that the absolute prohibition on extrinsic evidence applies *only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness*." Fed. R. Evid. 608 Advisory Committees Note. Moreover, the Committee Note affirms that "the amendment conforms the language of the Rule to its original intent, which was to impose an absolute bar on extrinsic evidence *only if the sole purpose for offering the evidence was to prove the witness' character for veracity*." Id. (emphasis supplied).

Here, the "sole reason for proffering" (id.) the evidence of Pabon's escalating discord and violent altercations with his wife is not to show that he is an untruthful person, but rather that the version of events that he inserted into the tapes which will be played at trial – and which purport to establish Mr. Gambardella's intent to scare Pabon into paying a debt – are infected by exaggerations and fabrications about his concerns and, therefore, did not occur at all. The defense would, of course, accept a limiting instruction informing the jury exactly the reasons for the admission of the domestic violence evidence. Accordingly, extrinsic evidence and questioning on this matter of domestic violence committed by linchpin witness Artie Pabon are highly probative and should not be withheld from the jury. See Schwab, 886 F.2d at 511.

**B.    Pabon's Uncharged Narcotics Activities and Conviction**

The government also seeks to preclude the cross-examination on Pabon's 1991 narcotics conviction and "uncharged narcotics activities" pursuant to Rule 609. Govt. *in limine* motions at 9. As with the incidents of spousal abuse, no supporting documentation – through either police reports, witness statements or court documents – have been provided to the defense which makes a meaningful evaluation of their probative value impossible. See Fed. R. Evid. 403, 609. Accordingly, the defense requests that the government turn over all relevant materials regarding Pabon's drug dealing – falling under the purview of 18 U.S.C. § 3500 or otherwise – so that its admissibility may be properly challenged. See, e.g., United States v. Schlussel, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *1 (S.D.N.Y. Feb. 27, 2009) (government provided defense with witness' § 3500 material in order to determine applicability under Rule 609(b)).

### The Information Provided by the Government

The sole information provided by the government concerning Pabon's 1991 conviction and uncharged narcotics activities comes by way of a skeletal, seven line description in its motions *in limine*.[2]  Specifically:

> Nearly twenty years before this trial, from the ages of 16 to 17, [Pabon] sold cocaine.  Specifically, on or about October 27, 1989, [Pabon] was arrested for selling approximately 1 kilogram of cocaine.  [Pabon] served 9 months in prison for that narcotics offense.  In addition, since his arrest at the age of 17, [Pabon] has ceased all narcotics activities.  [Pabon] has further stated that he has never used illegal narcotics.

Govt. *in limine* motions at 9.  No details concerning the characteristics of the offense are provided including for which statute Pabon was charged and convicted; nor is defendant Gambardella informed whether Pabon pleaded guilty, proceeded to trial or testified on his own behalf.  Moreover, the government provides *no* information concerning Pabon's "uncharged narcotics activities" beyond its mere existence.

### The 1991 Conviction

The government rightly concludes that Rule 609(b) governs the admissibility of Pabon's prior narcotics conviction as it occurred more than 10 years ago.  Govt. *in limine* motions at 10.  Simply, the rule precludes evidence of a witness's prior conviction if the date of conviction or release from confinement occurred more than 10 years before the date of trial, *unless* "the court decides, in the interests of justice, that the probative value of the conviction is supported by specific facts and circumstances [that] substantially outweigh[] its prejudicial effect."  Fed. R.

---

[2] During a telephone conversation on October 7, 2011, the government indicated that Pabon was actually sentenced to a term of ten years imprisonment suspended after nine months, another fact unsupported by any disclosed documentation.

Evid. 609(b); see also United States v. Payton, 159 F.3d 49, 57 (2d Cir. 1998) (trial court could only have admitted 13 year old conviction after balancing probative value and prejudicial effect). The government further notes that older convictions are usually of lower probative value and "instances in which courts have permitted [their] cross-examination under Rule 609(b) are typically those in which the prior conviction involved crimes of dishonesty or false statements." Govt. *in limine* motions at 10-11.

While these statements are admittedly correct, the facts supporting a narcotics conviction *may* properly implicate the truthfulness of a witness if the specific offense characteristics call into question his ability to tell the truth. See United States v. Hayes, 553 F.2d 824, 827-28 (2d Cir. 1977) (while analyzing prior conviction under Rule 609(a)'s identical factors, court opined that a narcotics importation scheme which required false written and oral statements would imperil a witness's veracity); United States v. Ortiz, 553 F. 782, 784 (2d Cir. 1977) ("a narcotics trafficker lives a life of secrecy and dissembling ... being prepared to say whatever is required by the demands of the moment, whether truth or lie"); United States v. Alfonso, No. 94-Cr-813, 1995 WL 276198, at *3 (S.D.N.Y. May 11, 1995) (same); United States v. Feola, 651 F. Supp. 1068, 1127 (S.D.N.Y. 1987). For example, a prior narcotics conviction which included evidence that the witness lied to officials, or occurred following a trial where he testified in his own defense *would necessarily implicate his veracity*. Hayes, 553 F.2d at 828. Indeed, the latter situation would "be viewed as a 'de facto finding that [he] did not tell the truth when sworn to do so.'" Id. quoting Gordon v. United States, 383 F.2d 936, 940 n.8 (D.C. Cir. 1967).

Here, however, the government has provided no "facts and circumstances," (Fed. R. Evid. 609(b)) for review by the defense to determine if Pabon's conviction is probative of his

truthfulness. Accordingly, all relevant material concerning this conviction should be disclosed to the defense so that the government's preclusion request may be considered in the context of the specific offense details. See Schlussel, No. 2009 WL 536066, at *1.

Pabon's Uncharged Narcotics Related Acts

While the government rightly claims that Fed.R.Evid. 609(b) governs the admissibility of Pabon's prior conviction, Rules 608(b) and 404(b) generally govern the admission of uncharged bad acts. United States v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003) (Rule 608(b) "permits the witness to be examined about such specific conduct, in the discretion of the court, if probative of truthfulness or untruthfulness. Similarly, Fed.R.Evid. 404(b) allows the admission of testimony regarding prior bad acts of a witness, so long as such evidence is not offered in order to show action in conformity therewith"). The applicable statute in either case is dictated by the purpose of the proffered evidence, (id.) yet, without any substantive details concerning Pabon's "prior uncharged narcotics's activities," (Govt. *in limine* motions at 12) the defense is unable to claim which avenue, if either, is appropriate. Accordingly, any material relating to Pabon's uncharged acts should be disclosed forthwith.

## **CONCLUSION**

For the reasons stated herein, the government's *in limine* motions should be denied in full.


Dated:     New York, New York
           October 11, 2011

                                            Respectfully submitted,


                                            _____/S/_____
                                            **JEFFREY LICHTMAN, ESQ. (JL6328)**
                                            **LAW OFFICES OF JEFFREY LICHTMAN**
                                            750 Lexington Ave., Fl. 15
                                            New York, NY 10022
                                            (212) 581-1001
                                            jhl@jeffreylichtman.com

                                            Attorney for Joseph Gambardella

## CERTIFICATE OF SERVICE

**JEFFREY LICHTMAN** declares under penalty of perjury:

1. I am over 18 years old and not a party to this action;

2. On October 11, 2011, I caused a copy of the **Opposition to the Government's *In Limine* Motions** in **United States v. Rodriguez, et al., 10 CR 674 (RJH)** to be delivered via ECF to:

**ARIANNA BERG, ESQ.**
**ASSISTANT UNITED STATES ATTORNEY**
SOUTHERN DISTRICT OF NEW YORK
ONE SAINT ANDREW'S PLAZA
NEW YORK, NEW YORK 10007

Dated:    New York, New York
          October 11, 2011

_____/S/_____

**JEFFREY LICHTMAN**